IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| VANCE HARRIS, JR. § | |
|    TDCJ-CID #832224 § | |
| § | |
| VS. § | C.A. NO. C-05-072 |
| § | |
| LT. CASTRO, ET AL. § | |

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56 (D.E. 80), to which plaintiff has filed a response (D.E. 90). Having considered the record, motions, affidavits and documentary evidence in support thereof, defendants' motion for summary judgment is granted, and plaintiff's claims are dismissed.

**I. JURISDICTION**

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331. The parties consented to the jurisdiction of a Magistrate Judge (D.E. 8, 41). By Order of Reassignment entered October 25, 2005, this action was re-assigned to the undersigned magistrate judge to conduct all further proceedings, including entry of final judgment. (D.E. 45).

**II. BACKGROUND AND PLAINTIFF'S ALLEGATIONS**

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and is currently incarcerated at the Wynne Unit in Huntsville, Texas, although his complaint concerns events that occurred while he was assigned to the McConnell Unit in Beeville, Texas. Plaintiff complains that on August 5, 2004, Officer Maldonado used excessive force against him and that Lieutenant Castro and Sergeant Briseno failed to protect him from Officer

Maldonado's alleged assault. Plaintiff is suing defendants in their individual and official capacities, and he seeks special damages in the amount of $900.00. Defendants move for summary judgment arguing that the alleged assault was in fact a coordinated use of force necessitated by plaintiff's refusal to exit a cell and proportionately related to maintain prison security and safety such that plaintiff fails to state a constitutional violation (D.E. 80). They argue further that, even if plaintiff can demonstrate a constitutional violation, they are entitled to qualified immunity. Id.

### III. SUMMARY JUDGMENT EVIDENCE AND UNCONTESTED FACTS

In support of their motion for summary judgment, defendants offer the following evidence:

Exh. A:   Written Use of Force Report with corresponding videotape for August 5, 2004; and

Exh. B:   Emergency Action Center Records related to the August 5, 2004, use of force.

In his summary judgment response, D.E. 90, plaintiff offers a portion of the August 5, 2004, Use of Force Report, consisting of an employee participant statement made by Officer Juan Jose Quintero. The Court has reviewed the use of force videotape. The following facts are not in dispute:

On August 5, 2004, at approximately 6 a.m., plaintiff was taken to the medical department in 10-Building for evaluation. D.E. 80, Ex. A at 8 (Lieutenant Castro's summary). After being evaluated by medical and psychiatric personnel, plaintiff was cleared to return to his assigned cell in Administrative Segregation in 12-Building. Id. The videotape shows that plaintiff refused to return to his assigned cell because he wanted to be transferred to the Jester IV Unit. See Ex. A, videotape, at 9:32.

Because plaintiff's refused to leave the cell, Lieutenant Castro contacted Major Domingo Carrillo to apprise him of the situation. D.E. 80, Ex. A at 7-11. Major Carrillo authorized Lieutenant Castro to assemble a five-man extraction team which was authorized to use force, if necessary, to remove plaintiff from the cell in 10-Building. Id.

Sergeant Briseno assembled the members of the five-man extraction team which was comprised of officers Javier Maldonado, Juan Quintero, Arthur Madrigal, Rafael Menchaca, and Lawrence Glew. D.E. 80, Ex. A at 7. Officer Rolando Saldivar operated the video camera. See D.E. 80, Ex. A at 34 (witness statement of Rolando Saldivar stating he operated the video camera).

Sergeant Briseno narrated the use of force video which indicates a start time of 9:31 a.m. Sergeant Briseno also gave a written witness statement. D.E. 80, Ex. A at 36-37. According to the videotape, Sergeant Briseno first explains to plaintiff that the five-man team has been assembled to remove him from the medical cell if he continues to refuse to leave because he has been cleared by medical personnel to return to his Administrative Segregation cell. Id. He stresses that the extraction team will be used only if he refuses to comply with the officers' orders. Sergeant Briseno asks if plaintiff will submit to hand restraints[1] and reports that he will not, and that he is taking a "defensive stance." Ex. A, videotape at 9:34. Lieutenant Castro then advises plaintiff that force will be used to remove him from the cell if he does not comply, and reports that plaintiff is maintaining a defensive stance. Id. Lieutenant Castro then orders the five-man extraction team into the cell.

Officer Maldonado was the first officer to enter the cell. See D.E. 80, Ex. A at 12-14 (Use of Force Report prepared by Officer Maldonado). Officer Maldonado held the shield and used it to place plaintiff on the ground. Id. at 13. Sergeant Briseno and Lieutenant Castro supervised the

---

[1] In his written report, Sergeant Briseno noted that plaintiff was in both hand and leg restraints, with a belt on, but that he took an aggressive stance, as he was "crouched low with his hands up." D.E. 80, Ex. B, at 12.

use of force, but did not assist in restraining him. See D.E. 80, Ex. A at 19-11 (use of force report by Lieutenant Castro) and Ex. A at 36-37 (witness statement of Sergeant Briseno). The use of force took approximately 20 seconds. See Ex. A, 9:35:35 to 9:36:00.

After the five-man team established control of plaintiff, they placed him on a gurney and took him to the 10-Building emergency room where he arrived at approximately 9:39 a.m. D.E. 80, Ex. A, videotape at 9:39; D.E. 80, Ex. A at 13 (statement of Javier Maldonado). At medical, plaintiff was examined by Dr. Herrera and nurse Jefferson, and photographs were taken of his injuries. D.E. 80, Ex. A at 46-48 (use of force injury report (offender) and photographs). Nurse Jefferson's notes indicate that plaintiff did not complain of any injuries following the use of report. Id. at 46. However, plaintiff did receive a serious laceration to his left cheek that required twelve (12) sutures. Id. In addition, he had a scratch on his left temple. Id.

As Dr. Herrera was suturing plaintiff's cheek, plaintiff complained that he had been injured because one of the officer's was "screwing the shield into his eye." D.E. 80, Ex. A, videotape at 10:05. Dr. Herrera disagreed and told plaintiff that the injury looked like it was received when plaintiff hit the floor. Id.

At 10:12 a.m, Sergeant Briseno announced on the videotape that plaintiff had been cleared by the medical and mental health department to return to his Administration Segregation cell. D.E. 80, Ex. A, videotape at 10:12 a.m. However, at 10:21 a.m., the officers then received orders that plaintiff would instead be transferred to the Jester IV Unit, id. at 10:21 a.m., and at 10:30 a.m., he was placed in a transportation box (special restraints). Id. However, at 10:47 a.m., the officers were told that plaintiff had again been cleared by medical and psych to be returned to his cell in Administrative Segregation. Id. The five-man team, along with Lieutenant Castro and Sergeant Briseno, escorted plaintiff to his assigned cell without further incident.

4

Plaintiff received a major disciplinary case for failing or refusing to obey an order which lead to a use of force.  D.E. 80, Ex. A at 49.

### IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motions.  Caboni v. General Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence or evaluate the credibility of witnesses.  See id.  Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify on the matters stated therein."  FED. R. CIV. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559 (5th Cir. 1992) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (stating that courts cannot consider hearsay evidence in affidavits and depositions).  Unauthenticated and unverified documents do not constitute proper summary judgment evidence.  King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party demonstrates

an absence of evidence supporting the nonmoving party's case, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. FED. R. CIV. P. 56(e); Anderson, 477 U.S. at 248-49. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." Caboni, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence . . . a verdict should not be directed." Anderson, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

## V. DISCUSSION

**A.     Claims against defendants in their official capacities.**

Plaintiff is seeking $900 in "special damages." D.E. 1 at ¶ VI.

A suit against a prison employee in his official capacity is the same as a suit against the entity the employee represents. Kentucky v. Graham, 473 U.S. 159, 166 (1985). The Eleventh Amendment bars a suit for money damages against a state or state agency. Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54-55 (1996). A judgment may not be entered against a state officer in his official capacity for violating federal law in the past, although prospective relief may be granted. Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146, (1993).

To the extent plaintiff is suing defendants in their official capacities for money damages, those claims are barred by the Eleventh Amendment. Thus, defendants' motion for summary judgment to dismiss plaintiff's claims against them for money damages in their official capacities is granted, and those claims are dismissed with prejudice.

**B.    Qualified Immunity**

Defendants' move for summary judgment on the grounds of qualified immunity. The qualified immunity determination involves a two-step analysis: first, "'whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right.'"  Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003) (quoting Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001)).  If a constitutional violation is alleged, the Court must next determine "whether the right was clearly established – – that is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 624.  Once defendants have invoked the defense of qualified immunity, the burden shifts to plaintiff to show that the defense is inapplicable.  McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

The threshold question in a qualified immunity analysis is whether a constitutional right would have been violated on the facts alleged.  Saucier v. Katz, 533 U.S. 194, 200 (2001).

**1.    Excessive force.**

To state a claim for excessive force, plaintiff must show that the force was not applied in a good-faith effort to maintain or restore discipline, but was applied maliciously and sadistically to cause harm, and that the injury he suffered was more than *de minimis,* but not necessarily significant. See Hudson v. McMillian, 503 U.S. 1, 6, 10 (1992); Gomez v. Chandler, 163 F.3d 921, 923-24 (5th Cir. 1999); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997).  The factors to be considered are

7

(1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response. Gomez, 163 F.3d at 923.

### Officer Maldonado

In his original complaint, plaintiff alleged that Officer Maldonado was "the shield man of the 5-man team" and that he "lost full control by assaulting my left eye and head." D.E. 1 at V. He described the event as follows:

> I ... attempted to squeeze by lead shield security man COIII Maldonado. But ended up falling backward without being touched by anyone of the 5-man team. After I realize [sic] I was down I froze and didn't move mainly because I was in shock. COIII leader Maldonado enter with the team and with an out of control manner COIII leader Maldonado went straight for my left eye and started to hug my head and with his fist balled up inside my left eye started twisting his fist to seriously assault my left eye. Also COIII Maldonado started using his weight by rocking back and forth like an [sic] mad man. I pasted [sic]out awaken reciving [sic] stitches.

D.E. 1 at 4.

*Step 1 – Constitutional violation.*

A plaintiff asserting an excessive force claim must have "suffered at least some form of injury." Jackson v. R.E. Culbertson, 984 F.2d 699, 700 (5th Cir. 1993). The amount of injury necessary to satisfy the requirement of "some injury" and establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstances. Williams v. Butler, 180 F.3d 699, 704 (5th Cir. 1999). For example, in Williams, the Fifth Circuit found that the police officer's first search of a detainee's mouth, which the detainee characterized as a "choking," did not amount to a cognizable injury because any search by an officer would involve a physical confrontation and the alleged injury of fleeting dizziness, temporary loss of

breath, and coughing, did not rise to a constitutional violation. Id. at 704. However, with respect to the second choking, taking the plaintiff's allegations as true, the Fifth Circuit could find that the choking was motivated by malice, and not that the police officer was legitimately exercising force in the performance of his duties as an officer. Id.

In this case, plaintiff sustained a cut on his left cheek that required twelve stitches, which is clearly some injury. However, in the context of plaintiff refusing to exit his cell, after being ordered to do so by two supervising officers on numerous occasions, and after being advised that force would be used to extract him from his cell, it cannot be said that the force employed or the injury sustained was unreasonable. Moreover, the videotape refutes certain of plaintiff's allegations. First, there is no indication that Officer Maldonado entered the cell in an "out of control" manner. He and the other four members of the team simply stepped in together. Plaintiff claims he ended up falling backward and was not touched by anyone, but that Officer Maldonado then went for his eye and began twisting his fist into it. No such action is shown on the videotape. Granted, it is not possible to observe all of the individual officers' hands or exactly what they are doing, but it appears as if the officers force plaintiff to the ground, using the shield. There is no indication that Officer Maldonado "rocked" on plaintiff. Plaintiff does not struggle or cry out in pain. The officers do not appear overly rough, and the entire event lasts less than 20 seconds. Thereafter, plaintiff is told that he will be taken to medical for evaluation of his injuries. Contrary to plaintiff's allegation that he passed out until he discovered he was receiving stitches, when told he was being transported to medical for evaluation of injuries, he commented to Sergeant Briseno "evaluate your ass" and offered other obscenities. See D.E. 80, Ex. A, videotape at 9:37. At medical, he complained to Dr. Herrera that the shield, not Officer Maldonado's fist, had been screwed into his left eye, and Dr.

9

Herrera told him his injury was not consistent with that description, but most likely occurred from the fall, which plaintiff admits happened. Id. at 10:05.

### *Step 2: Objective reasonableness.*

For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of that right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "The central concept [of the test] is that of fair warning: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights. Hope v. Pelzer, 536 U.S. 730, 740 (2002). Even officers who interpret the law mistakenly but reasonably are entitled to immunity. See Anderson, 483 U.S. at 641. Whether Officer Maldonado's actions were objectively reasonable depends on whether the use of force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillian, 503 U.S. 1, 5 (1992).

On the videotape, plaintiff alleged that Officer Maldonado screwed the shield down into his face, and in his complaint, plaintiff alleges that Officer Maldonado used his fist. Regardless of how plaintiff sustained his left-cheek laceration, the undisputed evidence shows that he repeatedly refused to comply with orders to leave the 10-Building cell and that he was warned that force could be used if he would not comply. Under the circumstances of this case, Officer Maldonado's actions, acting in concert with four other individuals of the five-man team, resulted in minimal injuries to plaintiff and served to restore the desired order sought. Under these circumstances, it cannot be said that Officer Maldonado's actions were anything but objectively reasonable. See e.g. Whitley v.

Albers, 475 U.S. 312, 324-25 (1986) (shooting a prisoner in the leg, without a prior verbal warning, while quelling a prison riot, did not constitute excessive force under the circumstances); Cain v. Ambriz, 114 Fed. Appx. 600 (5th Cir. 2004) (corrections officer, using his open hand to push inmate's face and force him into cell, was not objectively unreasonable, given inmate's admitted refusal to comply with officer's request). Officer Maldonado is entitled to qualified immunity on plaintiff's excessive force claims.

### Lieutenant Castro and Sergeant Briseno

Lieutenant Castro and Sergeant Briseno move for summary judgment in their favor arguing that they were not personally involved in the deprivation of a constitutional right.

Personal involvement in an alleged constitutional deprivation is an essential element of a civil rights cause of action. Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). In order to successfully plead a cause of action in a civil rights case, the plaintiff must enunciate a set of facts that illustrate each defendant's participation in the alleged wrong. Jacques v. Procunier, 801 F.2d 789, 793 (5th Cir.1986). There must be an affirmative link between the plaintiff's injury and the defendant's conduct. Rizzo v. Goode, 423 U.S. 371-72, 377 (1976).

In this case, Lieutenant Castro and Sergeant Briseno were the supervising officers of the use of force team. Lieutenant Castro obtained the authorization from Major Carrillo to use force, if necessary, to remove plaintiff from the medical cell in 8-building. D.E. 80, Ex. A at 8. Sergeant Briseno assembled the five-man extraction team and narrated the use of force video. Id. at 36-40. Thus, to the extent plaintiff is attempting to allege a claim of excessive force against Lieutenant Castro or Sergeant Briseno, he fails to establish personal involvement, and defendants are entitled to summary judgment in their favor on those claims.

### 2.     **Failure to protect.**

Plaintiff argues that Lieutenant Castro and Sergeant Briseno failed to protect him from Officer Maldonado's alleged assault.

*Step 1: Constitutional violation.*

Prison officials may be liable under the Eight Amendment if they are deliberately indifferent to the health and safety of the inmates under their charge. Farmer v. Brennan, 511 U.S. 825, 834, (1994). The deliberate indifference standard "describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. Id. at 837. The reason for focusing on the official's mental attitude is to isolate those defendants who inflict punishment. Id. at 839. Deliberate indifference may be inferred from the fact that the risk of harm is obvious. Hope v. Pelzer, 536 U.S. 760, 738-39 (2002).

Essential to plaintiff's failure to protect claim is evidence that the defendants *knew of* a substantial risk of harm to the plaintiff. Farmer, 511 U.S. at 847. In this case, however, the summary judgment evidence refutes plaintiff's allegation of an assault and establishes that the force employed by Officer Maldonado was used to restore discipline and order.

Moreover, even if Officer Maldonado had assaulted plaintiff, plaintiff has failed to offer any evidence that either Lieutenant Castro or Sergeant Briseno would have had reason to suspect that Officer Maldonado would cause plaintiff harm. Plaintiff never complained in the past about Officer

Maldonado. There is no evidence of a troubled history between plaintiff and Officer Maldonado, nor has he presented any evidence that Officer Maldonado has a reputation as an abusive guard or one that is frequently reprimanded for inmate abuse. Thus, plaintiff fails to state a constitutional violation against these defendants, and the Court need not examine whether defendants' actions were objectively reasonable. See Saucier v. Katz, 533 U.S. 194, 201 (2001) (if the facts alleged do not establish that the officer's conduct violated a constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate). Accordingly, defendants' motion for summary judgment to dismiss plaintiff's claims against Lieutenant Castro and Sergeant Briseno is granted, and plaintiff's claims against these defendants are dismissed with prejudice.

## VI.  CONCLUSION

Plaintiff's claims for money damages against defendants in their official capacities are barred by the Eleventh Amendment, and defendants are granted summary judgment in their favor dismissing those claims. Defendants' motion for summary judgment on plaintiff's claims against them in their individual capacities (D.E. 80) is GRANTED, and plaintiff's claims are dismissed with prejudiced.

ORDERED this 17th day of May, 2006.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE